**Docket No. 19-5070**

*In the*

# United States Court of Appeals

*For the*

# Sixth Circuit

◆

**D.T., a minor, by and through his parents B.K.T. and B.H.T.,**

*Plaintiffs-Appellants*,

v.

**SUMNER COUNTY SCHOOLS, *et al.*,**

*Defendants-Appellees*.

On Appeal from the U.S. District Court for the Middle District of Tennessee
No. 3:18-cv-00388 ✦ Hon. William L. Campbell, Jr.

## APPELLANTS' OPENING BRIEF

Robert C. Thurston, Esq.
Thurston Law Offices LLC
100 Springdale Road A3
PMB 287
Cherry Hill, NJ 08003
856-335-5291
rthurston@schoolkidslawyer.com

Michael F. Braun, Esq.
Post Office Box 364
Brentwood, TN 37024
(615) 378-8942
mfb@braun-law.com

*Attorneys for Plaintiffs-Appellants*

# CORPORATE DISCLOSURE

Pursuant to 6 Cir. R. 26.1, Plaintiffs-Appellants' Disclosure of Corporate

Affiliations and Financial Interest is on file with this Court as Document # 10.

**TABLE OF CONTENTS**

**Page**

CORPORATE DISCLOSURE ...............................................................................1

TABLE OF AUTHORITIES ..................................................................................4

STATEMENT IN SUPPORT OF ORAL ARGUMENT ..........................................7

INTRODUCTION .................................................................................................8

JURISDICTIONAL STATEMENT ........................................................................8

ISSUES PRESENTED...........................................................................................9

STATEMENT OF THE CASE..............................................................................10

SUMMARY OF THE ARGUMENT .....................................................................13

ARGUMENT ......................................................................................................14

    I.    IT WAS ABUSE OF DISCRETION BY THE DISTRICT COURT TO NOT FIND THAT DEFENDANTS-APPELLEES' THREAT OF CRIMINAL PROSECUTION IS IRREPARABLE INJURY IN FACT TO PLAINTIFFS-APPELLANTS FOR PURPOSES OF INJUNCTIVE RELIEF ........................................................................14

        A.    Standard of Review...................................................................14

        B.    The Threat of Criminal Prosecution Satisfies the Legal Standard For Imminent Harm as 'Injury in Fact' ....................15

        C.    The Threat of Criminal Prosecution By SCS is Real ...............16

    II.    THE DISTRICT COURT ERRED BY FAILING TO REVIEW ALL FOUR FACTORS IN RULING ON PLAINTIFFS-APPELLANTS' MOTION FOR INJUNCTIVE RELIEF ...............................................18

        A.    Standard of Review...................................................................18

        B.    A Strong Success on the Merits.................................................19

C.    Issuance of the Injunction Will Not Cause Substantial Harm to Anyone ...................................................................................27

D.    Public Interest Would Be Greatly Served By Issuance of the Injunction ..................................................................................29

CONCLUSION .......................................................................................31

ADDENDUM ..........................................................................................33

CERTIFICATE OF COMPLIANCE....................................................35

CERTIFICATE OF SERVICE ..............................................................36

# TABLE OF AUTHORITIES

**Cases**                                                    **Page(s)**

*Certified Restoration Dry Cleaning v. Tenke*,
  511 F. 3d 535 (6th Cir. 2007) ........................................................................ 18

*Cipollone v. Liggett Group, Inc.*,
  505 U.S. 504 (1992) .....................................................................................x

*Deal v. Hamilton County Bd. of Educ.*,
  392 F. 3d 840 (6th Cir. 2004) .....................................................................x

*Hamilton's Bogarts, Inc. v. Michigan*,
  501 F.3d 644 (6th Cir. 2007) ...............................................................27-28

*Kiser v. Reitz*,
  765 F. 3d 601 (6th Cir. 2014) .....................................................................x

*Lawrence v. Blackwell*,
  430 F. 3d 368 (6th Cir. 2005) .....................................................................x

*Leary v. Daeschner*,
  228 F.3d 729 (6th Cir. 2000) .....................................................................x

*L.H. v. Hamilton County Dept. of Educ.*,
  900 F.3d 779 (6th Cir. 2018) .....................................................................x

*Overstreet v. Lexington-Fayette Urban County Gov't*
  305 F. 3d 566 (6th Cir. 2002) .....................................................................x

*Pestrak v. Ohio Elections Co*m'n,
  926 F. 2d 573 (6th Cir. 1991) .....................................................................x

*R.B. v. Mastery Charter School*,
  532 Fed. Appx. 136 (3rd Cir. 2013) ..............................................25, 26, 27

*Sam K. v. State of Hawaii Dept. of Educ.*,
  788 F.3d 1033 (9th Cir. 2015) .....................................................................x

*Steffel v. Thompson*,
  415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) ......................................x

*TK v. New York City Dept. of Educ.*,
  810 F. 3d 869 (2nd Cir. 2016) ...................................................................x

*WXYZ, INC. v. Hand*,
  658 F. 2d 420 (6th Cir. 1981) ...................................................................x

**Federal Statutes**                                                  **Page(s)**

28 U.S.C. §1292 .............................................................................8

28 U.S.C. §1331 .............................................................................8

20 U.S.C. §1412 .......................................................................19, 28

20 U.S.C. §1414 ...........................................................................19

20 U.S.C. §1415 ...........................................................................20

**State Statutes**                                                    **Page(s)**

Tenn. Code Ann. §40-35-111..............................................................x

Tenn. Code Ann. §§49-6-1001 *et seq.* ...............................................x

Tenn. Code Ann. §49-6-3001..........................................................19

Tenn. Code Ann. §49-6-3007..............................................................x

Tenn. Code Ann. §49-6-3009..............................................................x

**Rules**                                                                                          **Page(s)**

FRAP 3 ..................................................................................................8

FRAP 4 ..................................................................................................8


**Other Authorities**                                                                   **Page(s)**

"Applied Behavior Analysis," Autism Speaks,
https://www.autismspeaks.org/applied-behavior-analysis-aba-0............8

Merriam-Webster.com, https://www.merriam-webster.com, 2011 ........8

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Pursuant to 6 Cir. R. 34(a), Plaintiffs-Appellants respectfully request oral argument in this case. This case presents issues of first impression in this Circuit, namely whether the federal preemption doctrine bars filing and prosecution of truancy charges under Tennessee state law because of the supremacy of federal special education law that grants parents of a child with a disability the unfettered right to place such child in a private program. Adequate review of this matter by this Court as to the conflict between federal IDEA law and Tennessee school truancy law requires discussion, particularly public policy concerns, beyond the scope and page limitations of the briefs. This Court is likely to have questions about whether injunctive relief is warranted pending resolution of the federal preemption issue and whether the district court erred in its analysis. Specifically, oral argument is useful to examine the intersection between 'immediate or irreparable harm' caused by the threat of truancy charges and the *Younger* Abstention Doctrine. Since the parties cannot anticipate fully the queries of the panel assigned to this matter, it is appropriate to have a forum to address such issues.

## INTRODUCTION

B.H.T. and B.K.T. were convicted under the Tennessee Truancy Law because they were exercising their legal rights under the federal Individuals with Disabilities Education Act ("IDEA") by removing D.T., a child with a disability, from the public school and seeking reimbursement for his private placement. Defendants-Appellees filed the first truancy petition and Plaintiffs-Appellants seek to enjoin them from filing another until the federal preemption issue is resolved.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1292(a)(1) as an appeal from an Order Denying Plaintiffs' Second Emergency Motion for a Temporary Restraining Order and Preliminary Injunctive Relief entered by U.S. District Judge William L. Campbell, Jr. on January 14, 2019 at 9:02 am CST (Order, RE 50, Page ID # 437-439[1]) and a Notice of Interlocutory Appeal filed on January 16, 2019 pursuant to FRAP 3(a) and 4(a)(1)(A) (Notice of Interlocutory Appeal, RE 53, Page ID # 442-444), which was two days after the date of the Order appealed.  The U.S. District Court has jurisdiction over this

---

[1] References to the district court's electronic record are in the format as per 6 Cir. R. 30(g)(1) and 28(b)(1)(A)(i).  *See* Addendum.

matter pursuant to 28 U.S.C. §1331 premised upon the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§1415(i)(2)(A) and (3)(A); Section 504 of the Rehabilitation Act, 29 U.S.C. §794 ("§504"); and the Americans with Disabilities Act, 42 U.S.C. §12101 *et. seq.* ("ADA").

## ISSUES PRESENTED

I.      Did the district court err by finding that the threat of additional truancy criminal prosecution against Plaintiffs-Appellants is not irreparable injury in fact sufficient to award injunctive relief?

II.     Did the district court err by failing to review all four factors to determine whether injunctive relief is appropriate?

## STATEMENT OF THE CASE

D.T. is a young boy with Autism who resides in Gallatin, Tennessee with his parents B.K.T. and B.H.T. (Verified Complaint, RE 1, Page ID # 1-2.)  After failed attempts to find a proper educational placement for D.T. and under threats of truancy charges by representatives of Sumner County Schools ("SCS"), D.T.'s parents enrolled him at Vena Stuart Elementary School ("VES"), a public school operated by SCS.  (Verified Complaint, RE 1, Page ID # 2-11.)  Because of the virtually continuous threats of truancy charges, Plaintiffs-Appellants acquiesced to an inappropriate Individualized Education Program ("IEP")[2] for D.T. at VES. (Verified Complaint, RE 1, Page ID # 11-12.)

Since D.T. was regressing at VES, his parents provided notice to SCS in January 2018 that they were unilaterally removing D.T. from the public school and privately placing him at HOPE Autism and Behavioral Services ("HOPE") as per their legal rights under IDEA.  (Verified Complaint, RE 1, Page ID # 12-13.)  In response to this action, SCS renewed its threats of truancy charges and made good on such threats by filing a petition for truancy in the Sumner County (TN) Juvenile

---

[2] An IEP is a document describing special education and related services for a child with a disability provided by a school district pursuant to IDEA.  *See* 20 U.S.C. §1414(d).

Court against D.T.'s parents in March 2018.  (Verified Complaint, RE 1, Page ID # 13-15.)

Plaintiffs-Appellants simultaneously filed their Verified Complaint (Verified Complaint, RE 1, Page ID # 1-31) and Emergency Motion for a Temporary Restraining Order and Preliminary Injunctive Relief Pursuant to Fed.R.Civ.P. 65 (Emergency Motion for TRO #1, RE 6, Page ID # 81-106) seeking to enjoin the truancy criminal proceedings.  The district court denied the motion on the basis that the *Younger* Abstention Doctrine prohibits a federal court from interfering with a state criminal proceeding.  (Order, RE 9, Page ID # 111-114.)

While the underlying federal case was stayed (Order, RE 35, Page ID # 247), the truancy criminal case proceeded to trial on December 6, 2018 and a guilty finding and judgment was entered against B.K.T. and B.H.T.  (Emergency Motion for TRO #2, RE 39, Page ID # 288-293.)  The reason for a guilty verdict was that D.T.'s private placement – HOPE – does not fall within the three exceptions to public school attendance in the Tennessee truancy statute. (Emergency Motion for TRO #2, RE 39, Page ID # 292.)  At the suggestion of Judge Howard[3], Plaintiffs-Appellants enrolled D.T. at Benton Hall Academy in Nashville, Tennessee simply to avert additional truancy charges filed by SCS,

---

[3] Judge Howard presided over the truancy criminal proceedings.  (*See* Emergency Motion for TRO #2, RE 39, Page ID # 288-293.)

11

although uncertain that it is an appropriate placement for D.T. (Certification of Beth Tippitt, RE 41, Page ID # 307-310.)

Shortly thereafter, Plaintiffs-Appellants filed their Second Emergency Motion for a Temporary Restraining Order and Preliminary Injunctive Relief to keep SCS from filing additional truancy charges threatened should B.K.T. and B.H.T. disenroll D.T. from Benton Hall Academy. (Emergency Motion for TRO #2, RE 39, Page ID # 256-297.) The district court allowed full briefing of the motion by the parties and held a hearing on January 9, 2019. (Order, RE 50, Page ID # 437.) The district court denied Emergency Motion for TRO #2 examining only one factor of the test for preliminary injunctive relief and finding "Plaintiffs-Appellants have failed to demonstrate that 'irreparable injury is *likely* in the absence of an injunction.'" (Order, RE 50, Page ID # 438.)

## SUMMARY OF THE ARGUMENT

The district court erred in two critical respects in its decision below to deny Plaintiffs-Appellants' injunctive relief from Defendants-Appellees filing additional truancy charges. There are four factors that a court should consider when ruling on a motion for injunctive relief. The district court only analyzed the second factor, namely, whether Plaintiffs-Appellants would suffer irreparable injury without the injunction. In its singular analysis, the court disregarded the threat of criminal prosecution as meeting the 'injury in fact' portion of the test. The district court also failed to address the other three factors, which is error because a reviewing court might analyze these prongs differently. Had the district court below properly performed its evaluation of all four factors it would have concluded that Plaintiffs-Appellants were entitled to the relief sought.

## ARGUMENT

**I.  IT WAS ABUSE OF DISCRETION BY THE DISTRICT COURT TO NOT FIND THAT DEFENDANTS-APPELLEES' THREAT OF CRIMINAL PROSECUTION IS IRREPARABLE INJURY IN FACT TO PLAINTIFFS-APPELLANTS FOR PURPOSES OF INJUNCTIVE RELIEF**

Whether harm is irreparable under a preliminary injunction analysis is a legal conclusion.  Such legal conclusion is subject to *de novo* review by this Court. The district court failed to acknowledge that SCS' threatened additional criminal prosecution of Plaintiffs-Appellants for truancy satisfies the irreparable harm factor of the injunctive relief test and was therefore an abuse of discretion.

### A.  Standard of Review

A district court's decision denying preliminary injunctive relief is reviewed under an abuse of discretion standard.  *Certified Restoration Dry Cleaning v. Tenke*, 511 F. 3d 535, 540 (6th Cir. 2007); *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007).  Under this standard, review of the district court's legal conclusions is *de novo*. *Certified Restoration Dry Cleaning*, 511 F. 3d at 541.  The district court's determination as to whether the four preliminary injunction factors weigh in favor of granting or denying preliminary injunctive relief is reviewed for abuse of discretion. *Id.*  This standard of review is "highly deferential" to the district court's decision. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).  A district court's ruling will be disturbed if it improperly applied

14

the governing law or used an erroneous legal standard. *Certified Restoration Dry Cleaning*, 511 F. 3d at 541.

**B.    The Threat of Criminal Prosecution Satisfies the Legal Standard For Imminent Harm as 'Injury in Fact'**

The second factor of the injunctive relief test is "whether the movant would suffer irreparable injury without the injunction." *Certified Restoration Dry Cleaning*, 511 F. 3d at 542. Each factor of the test should be considered and balanced by the district court, not as a prerequisite that must be met. *Id.* Determination of irreparable injury is a legal conclusion. *See, e.g.*, *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F. 3d 566, 578 (6th Cir. 2002) ("A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages.")

This Court recently held that threat of criminal prosecution is "injury in fact" for purposes of determining whether injunctive relief is appropriate.

> When a plaintiff has engaged in a course of conduct and the state has instructed him to stop or face disciplinary action, we may infer a threat of prosecution that is neither "chimerical," *Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) (internal quotation marks omitted), nor "imaginary or wholly speculative," *Babbitt v. Farm Workers*, 442 U.S. 289, 302, 99 S.Ct. 2301 (1979). Under such circumstances, a plaintiff has adequately alleged a concrete and imminent harm sufficient to meet the "injury in fact" requirement.

15

*Kiser v. Reitz*, 765 F. 3d 601, 608 (6th Cir. 2014).  "The injury alleged can be either a past or future injury, as the litigant need not actually undergo prosecution." *Pestrak v. Ohio Elections Co*m'n, 926 F. 2d 573, 576 (6th Cir. 1991) *citing Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).  The district court failed to consider this legal principle despite being raised by Plaintiffs-Appellants below.  (*Compare* Order, RE 50, Page ID # 438 *with* Reply, RE 49, Page ID # 422.)

### C. The Threat of Criminal Prosecution By SCS is Real

Defendants-Appellees have already pursued and obtained one conviction against Plaintiffs-Appellants for truancy.  (Emergency Motion for TRO #2, RE 39, Page ID # 288-293.)  Defendants-Appellees are chomping at the bit to repeat criminal prosecution of Plaintiffs-Appellants as revealed by the following thinly-veiled threat:

> For example, if, at the beginning of the 2019–2020 school year, Benton Hall or any other provate [sic] school provides notices that D.T. is no longer enrolled in a private school and D.T. remains a Sumner County resident, then SCS will have to investigate whether D.T. is complying with compulsory attendance laws and take action, if necessary. Compliance is necessary to avoid sanctions from the Tennessee Department of Education ("TDOE"), such fines and additional truancy training.

(Opposition, RE 44, Page ID # 321; emphasis added.)

Thus, Plaintiffs-Appellants are presented with a 'Catch-22' – pay $111,000.00 per year to keep D.T. enrolled at Benton Hall where they can't be sure

16

it will meet the special education needs of D.T. or return him to the known success at HOPE and face additional truancy charges. (Certification of Beth Tippitt, RE 41, Page ID # 307-308.) To resolve this dilemma, Plaintiffs-Appellants filed the Second Emergency Motion for a Temporary Restraining Order and Preliminary Injunctive Relief. (Emergency Motion for TRO #2, RE 39, Page ID # 256-297.) For Defendants-Appellees would likely invoke the *Younger* Abstention Doctrine to preempt any motion to enjoin a subsequent truancy petition recognizing that the district court had already so ruled previously. (Order, RE 9, Page ID # 111-114.) However, as this Court has stated previously, as long as a truancy petition is not actually pending, a court may enjoin Defendants-Appellees from prosecuting such charge.

> [T]he abstention rule of *Younger v. Harris* . . . and its progeny is clear. Lacking extraordinary circumstances, a federal court cannot enjoin a pending state criminal proceeding. [Internal citation omitted] . . . However, when no state proceeding is pending, and considerations of equity, comity, and federalism are therefore diminished, a federal court may consider constitutional challenges to state statutes and grant declaratory and injunctive relief. *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Wooley v. Maynard*, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977).

*WXYZ, INC. v. Hand*, 658 F. 2d 420, 423 (6th Cir. 1981).

17

## II.  THE DISTRICT COURT ERRED BY FAILING TO REVIEW ALL FOUR FACTORS IN RULING ON PLAINTIFFS-APPELLANTS' MOTION FOR INJUNCTIVE RELIEF

The district court only discussed the 'irreparable injury in fact' factor as discussed above and committed reversible error on that legal issue.  Had that court properly analyzed all four factors, it would have concluded that preliminary injunctive relief in favor of Plaintiffs-Appellants is appropriate. This Court should rectify that error, perform an independent analysis of the other three factors, and conclude that Plaintiffs-Appellants are entitled to such relief.

### A.    Standard of Review

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Certified Restoration Dry Cleaning*, 511 F. 3d at 542.  "[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. Accordingly, a party is not required to prove his case in full at a preliminary injunction hearing and the findings of fact and conclusions of law made by a court granting the preliminary injunction are not binding at trial on the merits." *Id.*

"When considering a motion for preliminary injunction, a district court must balance four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the

18

injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction." *Id.* "These four considerations are factors to be balanced, not prerequisites that must be met." *Id.* "The district judge is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue. However, it is generally <u>useful for the district court to analyze all four of the preliminary injunction factors</u>, especially since our analysis of one of the factors may differ somewhat from the district court's." *Id.* (emphasis added.)

## B.    A Strong Success on the Merits

"In order to establish success on the merits of a claim, a plaintiff must show more than a mere possibility of success." *Id.* Based on the facts pleaded in the Verified Complaint, Plaintiffs-Appellants have demonstrated a strong likelihood of success on the merits of their federal preemption claim. There is a conflict between Tennessee's compulsory attendance law ("truancy law") and private placement of a child with a disability under federal IDEA law. By operation of the federal preemption doctrine, federal IDEA law prevails. Therefore, Tennessee's truancy law cannot be enforced against parents[4] of a child with a disability who

---

[4] It bears mentioning that this is not a 'classic' case of truancy, e.g. a student that is intentionally skipping school or a parent who is involved in educational neglect. Judge Howard acknowledged this when he noted that Plaintiffs-Appellants herein

19

have privately placed their child and truancy charges should never have been and should never again be filed.

The Supremacy Clause of the U.S. Constitution states that federal law "shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding." U.S. Constitution, Article VI, Clause 2. The U.S. Supreme Court has held that if there is a conflict between a federal law and state law, the federal law prevails. *See Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) ("Thus, since our decision in *McCulloch v. Maryland*, 4 Wheat. 316, 427 (1819), it has been settled that state law that conflicts with federal law is 'without effect.' *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981).")

In a very similar case involving a conflict between the federal IDEA law and the Pennsylvania mandatory attendance law, the Third Circuit said:

> Under the doctrine of federal preemption, which is rooted in the Supremacy Clause of the Constitution of the United States, state laws are invalid if they "'interfere with, or are contrary to, federal law.'" *Fellner v. Tri-Union Seafoods, L.L.C.*, 539 F.3d 237, 242 (3rd Cir. 2008) (*quoting Hillsborough Cnty. v. Automated Med. Labs.*, 471 U.S. 707, 712 (1985)). "There are three types of preemption: express preemption and two types of implied preemption, field preemption and conflict preemption." *Treasurer of N.J. v. U.S. Dep't of Treasury*, 684 F.3d 382, 406 (3rd Cir. 2012). Conflict preemption is found where

---

have made significant efforts to find an appropriate placement for D.T. and he was enrolled in different private schools, then at VES, and then at HOPE. (*See* Emergency Motion for TRO #2, RE 39, Page ID # 291-292.)

20

"compliance with both federal and state regulations is a physical impossibility," *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963), or where state law erects an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Farina v. Nokia Inc.*, 625 F.3d 97, 115 (3rd Cir. 2010) (internal quotation marks omitted).

*R.B. v. Mastery Charter School*, 532 Fed. Appx. 136, Opinion at 12 (3rd Cir. 2013). (Supplemental Authority, RE 28-1, Page ID # 230.)[5]  In *R.B.*, Mastery Charter School unilaterally disenrolled R.B. for violation of Pennsylvania's version of truancy law.  R.B. is a student with a disability who had an IEP and was entitled to 'stay put' protection under federal IDEA law.  Resolving the conflict in R.B.'s favor, the Third Circuit stated:

> Here, conflict preemption applies. It is impossible for Mastery to comply with the requirements of §11.24 of the Pennsylvania School Code, while simultaneously complying with the stay-put provision; Mastery cannot remove R.B. from its attendance roll and implement her IEP at the same time. Under the preemption doctrine, the stay-put provision prevails. *See Doe ex rel. Gonzalez v. Maher*, 793 F.2d 1470, 1485-86 (9th Cir. 1986) (holding that the stay-put provision of the Education for All Handicapped Children's Act ("EHA") preempted state law allowing the indefinite suspension or expulsion of a disabled student during administrative proceedings); *E.Z.-L. ex rel. R.L. v. NYC Dep't of Educ.*, 763 F. Supp. 2d 584, 599 (S.D.N.Y. 2011) (holding that the stay-put provision preempted state law regarding unjust enrichment).

---

[5] Plaintiffs-Appellants' Motion For Leave To Submit Supplemental Authority in the district was granted by Order dated October 3, 2018.  (Order, RE 32, Page ID # 241.)

*R.B.*, Opinion at 12-13 (Supplemental Authority, RE 28-1, Page ID # 231;

emphasis added.)

A similar conflict exists herein and should likewise be resolved in favor of

Plaintiffs-Appellants.

> 1.    *Tennessee truancy law*

Tennessee, like Pennsylvania, has a truancy law.  Pertinent sections of

Tennessee's version follow:

> Every parent, guardian or other legal custodian residing within this state having control or charge of any child or children between six (6) years of age and seventeen (17) years of age, both inclusive, shall cause the child or children to <u>attend public or nonpublic school</u>, and in event of failure to do so, shall be subject to the penalties provided in this part.

> Tenn. Code Ann. §49-6-3001(c)(1) (emphasis added.)

> As used in this part, "public school" and "nonpublic school" are defined as follows:

>> (A) "Nonpublic school" means a church-related school, home school or private school;

>>> (i) "Church-related school" means a school as defined in § 49-50-801;

>>> (ii) "Home school" means a school as defined in § 49-6-3050; and

>>> (iii) "Private school" means a <u>school accredited by, or a member of, an organization or association approved by the state board of education</u> as an organization accrediting or setting academic requirements in schools, <u>or that has been approved by the state</u>, or is in the future

22

approved by the commissioner in accordance with rules
promulgated by the state board of education; and

(B) "Public school" means any school operated by an LEA or
by the state with public funds.

Tenn. Code Ann. §49-6-3001(c)(3) (emphasis added.)

Truancy is defined as:

absent five (5) days without adequate excuse. This means an
aggregate of five (5) days during the school year and not necessarily
five (5) consecutive days

Tenn. Code Ann. §49-6-3007(e)(1).

Any parent, guardian, or other person who has control of a child, and
who violates this part commits educational neglect, which is a Class C
misdemeanor.

Tenn. Code Ann. §49-6-3009(a).

Each day's unlawful absence constitutes a separate offense.

Tenn. Code Ann. §49-6-3009(b) (emphasis added.)

Sentencing for conviction of a Class C misdemeanor is set forth in the Tennessee

statutes as:

not greater than thirty (30) days or a fine not to exceed fifty dollars
($50.00), or both, unless otherwise provided by statute.

Tenn. Code Ann. §40-35-111(e)(3).

In other words, each unexcused absence can independently trigger a jail sentence

of 30 days and/or $50 fine.  By the time of the Plaintiffs-Appellants' truancy trial,

SCS alleged they had accrued 137 days of unexcused absences (Emergency

23

Motion for TRO #2, RE 39, Page ID # 291) thereby subjecting them to a potential penalty of 4,110 days (over 11 years) in jail and/or $6,850.00 in fines.[6]

### 2.    Federal IDEA law on private placement

Under IDEA, parents of a child with a disability who has been receiving special education and related services from the public school may remove such child from the public school and place the child in a private program without the consent of such public school.  20 U.S.C. §1412(a)(10)(C).  There is no requirement under federal law that the private placement must be state-approved or otherwise fall within the definition of a "non-public school" as Tennessee defines it.  Indeed, in a leading case originating in Tennessee, this Circuit approved a private placement which did not fall within the limited exceptions to public school under the Tennessee truancy statute.  *See Deal v. Hamilton County Bd. of Educ.,* 392 F. 3d 840 (6th Cir. 2004) (Held, non-state-approved private ABA[7] therapy program was appropriate private placement for child with disability.)

---

[6] *See fn.* 4.

[7] ABA is an acronym for Applied Behavior Analysis, a common therapy used to help children diagnosed with Autism learn basic skills to enable them to be educated.  *See* "Applied Behavior Analysis," Autism Speaks, https://www.autismspeaks.org/applied-behavior-analysis-aba-0.

24

 3.    *The conflict between Tennessee truancy law and federal IDEA*

 *law on private placement*

Under Tennessee's truancy law there are only three exceptions to attending public school, namely (1) a "Church-related school"; (2) a "Home school"; and (3) a "Private school". Tenn. Code Ann. §49-6-3001(c)(3). A "private school" must be accredited by, or approved by the state board of education or the state. *Id.* IDEA has no such restrictions for private placement of a child with a disability. *See* 20 U.S.C. §1412(a)(10)(C); *see also L.H. v. Hamilton County Dept. of Educ.*, 900 F.3d 779 (6th Cir. 2018); *Deal,* 392 F. 3d 840; *Sam K. v. State of Hawaii Dept. of Educ.*, 788 F.3d 1033 (9th Cir. 2015); *TK v. New York City Dept. of Educ.*, 810 F. 3d 869 (2nd Cir. 2016). Therein lies the conflict.

Thus, in Tennessee, a parent whose child with a disability is receiving special education and related services in the public school who removes the child and places the child in a private program that is not state-approved can be found to violate the Tennessee truancy law. This is true even despite that the parent is doing what is legal under federal IDEA law and what they believe to be in the best interests of their child. Where this becomes extremely problematic is when, as is the case herein, there are no state-approved schools that meet the needs of the specific child. There are cases in which children, who are Tennessee residents, with severe disabilities causing behavioral issues need to go to out-of-state

25

residential facilities.  Federal IDEA law permits this private placement, but Tennessee law will consider the child truant.

As in *R.B.*, Defendants-Appellees enforced the Tennessee truancy law against D.T.'s parents who were simply following federal IDEA law by privately placing D.T. at HOPE.  Plaintiffs-Appellants seek to prevent such criminal prosecution from reoccurring while the district court decides the federal preemption issue.

> 4.    *Under the federal preemption doctrine, IDEA prevails and Plaintiffs-Appellants succeed on the merits*

Because there is a conflict between TN's truancy law and federal IDEA law on private placement, conflict preemption applies and federal law must prevail. D.T. is a child with a disability that had an IEP with SCS.  Plaintiffs-Appellants gave proper 10-day notice to SCS that they were removing D.T. from the public school and privately placing him at HOPE.  D.T. began attending HOPE as of February 1, 2018.  Despite Plaintiffs-Appellants continued attempts to resolve the dispute with SCS, Defendants-Appellees filed truancy charges against D.T.'s parents and obtained a conviction as a direct result of the conflict between Tennessee and federal law.  This is the precise scenario where the conflict arises and where compliance with federal IDEA law should prevail over Tennessee's

state law.  As such, Plaintiffs-Appellants have a very strong likelihood to succeed

on the merits.

The first factor of the injunction analysis weighs in favor of Plaintiffs-

Appellants.[8]

### C.    Issuance of the Injunction Will Not Cause Substantial Harm to Anyone

There is zero evidence on the record that anyone would be substantially

harmed by issuance of the injunction.  Defendants-Appellees would not be harmed

as they would simply have to refrain from filing new truancy charges against

D.T.'s parents.  There is no prejudice as a result.

In their opposition to the Motion for Injunctive Relief, Defendants-

Appellees repeatedly used the term "statutory obligation" with reference to

Tennessee's truancy law.[9]  (*See, e.g.,* Opposition, RE 44 and 45, Page ID # 314-

315, 315 fn. 2, 316, 319, 327, *et al.*)  The assertion that they had a "statutory

obligation" to file truancy charges against Plaintiffs-Appellants is specious.  When

read critically, the Tennessee truancy law is optional, not mandatory, and is

---

[8] The first argument in this brief addresses the second factor to be considered by a
district court in a motion for injunctive relief and will not be repeated in this
section, but is incorporated by reference.

[9] The Tennessee truancy law was amended effective July 1, 2018, but does not
alter the analysis herein.  *See* TCA §§49-6-3001 *et seq.*

27

intended to prevent classic truancy and parental / educational neglect, neither of which is supported by the facts before this Court.

> A director of schools or attendance supervisor shall devise and recommend, and the local board of education shall adopt, a progressive truancy intervention plan for students who violate compulsory attendance requirements prior to the filing of a truancy petition or a criminal prosecution for educational neglect. These interventions must be designed to address student conduct related to truancy in the school setting and minimize the need for referrals to juvenile court.

> Tenn. Code Ann. §49-6-3009(c) (emphasis added.)

> [A] student who accumulates five (5) days of unexcused absences during the school year is subject to the LEA's progressive truancy interventions and that continued unexcused absences may result in a referral to juvenile court.

> Tenn. Code Ann. §49-6-3007(e)(1) (emphasis added.)

> if the progressive truancy intervention plan is unsuccessful with a student and the school can document that the student's parent or guardian is unwilling to cooperate in the truancy intervention plan, the director of schools or designee may report the student's absences to the appropriate judge.

> Tenn. Code Ann. §49-6-3009(f) (emphasis added.)

This Court should take judicial notice that the word "may" means "optional", not "mandatory".  (*Contrast "may" and "shall",* Merriam-Webster.com, https://www.merriam-webster.com, 2011.)  Thus, SCS had a choice to file truancy charges against Plaintiffs-Appellees or not.  Although D.T. was enrolled in a private program, Defendants-Appellees chose to act as if D.T. was a teenager

28

intentionally skipping school or his parents were educationally negligent.  Yet, this still does not suggest any harm to Defendants-Appellees – or anyone – if the injunction was properly issued.

The third prong of injunctive relief analysis is met.

### D.   Public Interest Would Be Greatly Served By Issuance of the Injunction

There are two competing public interests in this matter, namely the rights of all children with disabilities and their families to enforce their legal rights under federal special education laws versus Tennessee's compulsory education laws. Tennessee requires children ages 6 – 17 to attend school.  Tenn. Code Ann. §§49-6-1001 *et seq.*  Under IDEA, "[a] free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive."  20 U.S.C. §1412(a)(1)(A).  To enforce those federal rights, Congress has granted parents of a child with a disability numerous "Procedural Safeguards." *See* 20 U.S.C. §1415.

The public would be served by an injunction herein with knowledge that state truancy law does not trump federal special education laws for children with disabilities.  The public should be assured that children with disabilities may be educated in nonpublic settings without fear of criminal charges being brought against them.  Where public schools in Tennessee lack the capabilities to provide

29

children with disabilities free appropriate public education through special education and related an appropriate private programs. An injunction in this matter would provide those families solace.

Tennessee's interests are also served. In these cases, children with disabilities are attending private programs and therefore in compliance with the requirement to attend "school". Simply because the children are not attending a state-approved school does not mean they are truant. Since special education may continue beyond the age of 17 for some children with disabilities, such children may not be able to function in a regular classroom with their age-equivalent peers. For the State of Tennessee to restrict and/or dictate what private programs are approved violates the letter and spirit of the IDEA private placement provision.

In anticipation of Defendants-Appellees' argument that this issue and/or this case is moot because the truancy case is over, the case is not moot because it is capable of repetition yet evading review. *Lawrence v. Blackwell*, 430 F. 3d 368, 371 (6th Cir. 2005) [citations omitted]. In fact, Defendants-Appellees can turn around and file the same charges against Plaintiffs-Appellants after five more unexcused absences. *See* Tenn. Code Ann. §49-6-3007(e)(1). Indeed, if federal courts do not enforce these principles, all school districts in the State of Tennessee will feel empowered to file truancy changes against hundreds, if not thousands, of other families similarly situated as Plaintiffs-Appellants.

Thus, the fourth prong of injunctive relief is met.

## CONCLUSION

WHEREFORE, Plaintiffs-Appellants respectfully request that this honorable Court overturn the district court's Order denying preliminary injunctive relief and either remand this matter to the district court with instructions to enter such relief or resolve the matter in this Court and enter preliminary injunctive relief against Defendants-Appellees (a) enjoining them from enforcing the conviction in the truancy case; and (b) enjoining them from filing additional / future truancy charges against Plaintiffs-Appellants pending resolution of the federal preemption issue.  In addition, this Court should award Plaintiffs-Appellants attorney's fees and costs pursuant to 20 U.S.C. §1415(i)(3)(B), and such other and further relief as this Court deems just and equitable.

31

Dated:  March 11, 2019                Respectfully submitted,

By: /s/ Robert C. Thurston
Robert C. Thurston, Esq.
Thurston Law Offices LLC
100 Springdale Road A3
PMB 287
Cherry Hill, NJ 08003
Telephone: (856) 335-5291
Email: rthurston@schoolkidslawyer.com

/s/ Michael F. Braun
Michael F. Braun, Esq.
Post Office Box 364
Brentwood, TN 37024
(615) 378-8942
mfb@braun-law.com

Attorneys for Plaintiffs-Appellants

**ADDENDUM**

District Court Record

| Record # | Description | Page ID # |
|---|---|---|
| 1 | Verified Complaint | 1-31 |
| 6 | Plaintiffs' Emergency Motion for a Temporary Restraining Order and Preliminary Injunctive Relief Pursuant to Fed.R.Civ.P. 65 and supporting Memorandum of Law and Declaration of Michael F. Braun ("Emergency Motion for TRO #1") | 81-106 |
| 9 | Memorandum & Order denying Emergency Motion for TRO #1 | 111-114 |
| 28 | Motion for Leave to Submit Supplemental Authority and supporting documents | 215-231 |
| 32 | Order Granting Leave to Submit Supplemental Authority | 241 |
| 35 | Order staying case | 247 |
| 39 | Plaintiffs' Second Emergency Motion for a Temporary Restraining Order and Preliminary Injunctive Relief and supporting documents ("Emergency Motion for TRO #2") | 256-297 |
| 41 | Certification of Beth Tippitt | 307-310 |
| 44, 45 | Defendants' Response In Opposition To Plaintiffs' Second Emergency Motion For Temporary Restraining Order And Preliminary Injunctive Relief and supporting exhibits ("Opposition") | 314-408 |
| 49 | Plaintiffs' Reply in Support of their Second Emergency Motion for a Temporary Restraining Order and Preliminary Injunctive Relief and supporting exhibits ("Reply") | 414-436 |

33

50        Order Denying Plaintiffs' Second Emergency Motion    437-439
          for a Temporary Restraining Order and Preliminary
          Injunctive Relief entered by U.S. District Judge
          William L. Campbell, Jr. on January 14, 2019 at 9:02
          am CST

53        Notice of Interlocutory Appeal                        442-444

## CERTIFICATE OF COMPLIANCE

Pursuant to FRAP 32(g), I certify that:

This brief complies with the type-volume limitation of FRAP 32(a)(7)(B) because this brief contains 5,353 words, excluding the parts of the brief exempted by 6 Cir. R. 32(b)(1).

This brief complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word 2016 Times New Roman 14-point font.

Date: March 11, 2019

/s/ Robert C. Thurston
Robert C. Thurston, Esq.
Thurston Law Offices LLC
100 Springdale Road A3
PMB 287
Cherry Hill, NJ 08003
Telephone: (856) 335-5291
Email: rthurston@schoolkidslawyer.com

*Attorney for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2019, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served via the appellate CM/ECF system.

Date:  March 11, 2019

/s/ Robert C. Thurston
Robert C. Thurston, Esq.
Thurston Law Offices LLC
100 Springdale Road A3
PMB 287
Cherry Hill, NJ 08003
Telephone: (856) 335-5291
Email: rthurston@schoolkidslawyer.com

*Attorney for Plaintiffs-Appellants*